**2. SAME.**

> The bank is entitled to the interpleader, though an application by plaintiff to restrain the payment of the fund to the other claimant during the pendency of the action has been denied, since such denial is not conclusive of the validity of plaintiff's claim.

Action by George Schweiger, as president of the Prinz Rupprecht Section, No. 6, des Bayerischen National Verbandes von North America, against the German Savings Bank of the City of New York, impleaded with others. Heard on motion by defendant bank for an interpleader. Granted.

E. I. Spink, for German Sav. Bank.

F. L. Drescher, for plaintiff and George Voelkel, trustee.

Joseph Steiner, for defendants.

GIEGERICH, J. The fact that the plaintiff was defeated upon his motion for an injunction to restrain a payment by the bank to the rival claimants of the fund does not conclude the question as to the validity of the plaintiff's claim. It may be that plaintiff's case will be found stronger at the trial than it was made to appear upon application for a provisional remedy. The claim is made by verified complaint, and it sufficiently appears that the bank would make the payment to the other claimants at some substantial risk. I think that a case for interpleader is made out, both under the Code of Civil Procedure and the banking law.

Motion granted. Settle order on notice.

---

(27 Misc. Rep. 101.)

WESTERN UNION TEL. CO. v. MANHATTAN RY. CO. et al.

(Supreme Court, Special Term, New York County. March, 1899.)

TRUST—RESERVATION IN DEED.

> Plaintiff was the owner of certain premises. Defendant railroad company thereafter built an elevated structure in front of the same, obstructing the street, and damaging the easements of plaintiff. Plaintiff thereafter conveyed his property, reserving all claim or right of action against the railroad company for injury or damage done to the property "in the past, present, or future" by reason of the construction and operation of the elevated road. The property was thereafter conveyed through several parties, the last grantee acquiring it under a deed referring to the former reservation of right of actions for encroachments thereon, contained in the original deed from plaintiff. The last purchaser knew of the existence of the railroad and the reservation in the deed, and the value of the easement taken was excluded from the price of the land. Thereafter such last purchaser sued defendant railroad company for damages resulting to the premises after he acquired title. *Held* that, as the parties intended that plaintiff should have the benefit of all damages to the property by reason of the operation and maintenance of the road, and that the grantee should receive no compensation therefor, and the purchase price was adjusted on that theory, and as the reservation was inoperative because it attempted to reserve the right of action for damages to premises the title of which was vested in another, the court will declare a trust in favor of the grantor as to the damages which the grantee may recover for the injuries to the easement.

Action by the Western Union Telegraph Company against the Manhattan Railway Company and others. Judgment for plaintiff.

Rush Taggert, for plaintiff.

Peckham, Wormer & Strong, for defendant Shepard.

William G. Peckham, in pro. per.

E. C. James & W. H. Godden, for defendant Manhattan Ry. Co.

Michael Cordozo, for defendants Levy, G. W. Tubbs, and Allen Mitchell.

MATTICE, J.    May 4, 1872, the plaintiff, the Western Union Telegraph Company, became the owner of the premises described in the complaint, situated on Church street, formerly Nos. 30, 32, 34, and 36 Trinity Place, in the city of New York:  In the year 1877 the Metropolitan Railway Company built an elevated structure in the street in front of said premises, and operated thereon a steam railroad. This elevated railroad and structure, and the operation thereof, obstructed the street, and was a damage to the easements appurtenant belonging to abutting owners.   On the 20th day of May, 1879, the Metropolitan Company leased this railroad to the Manhattan Railway Company, which last-named company operated the railroad as such lessee until May 7, 1894, when the property and franchises of the Metropolitan Company became merged in the Manhattan Company by a transfer of the entire capital stock of the Metropolitan Company, and the Manhattan Company became the owner of the property, rights, privileges, and franchises of the Metropolitan Company, and became liable for and subject to all the debts and liabilities of the Metropolitan Company, and all actions then pending against them.   This elevated railroad structure and the railroad have been maintained and operated in front of these premises without substantial change from the time of construction, in 1879, up to the present.   No compensation has ever been made for, nor has any title ever been acquired to, easements or property rights appurtenant to these premises.   The plaintiff continued uninterruptedly in the ownership of these premises from May 4, 1872, until June 4, 1888, on which date the property was transferred by deed to the defendant Tubbs.   The following reservation clause was inserted therein:

"The party of the first part hereto reserves all claim or right of action against the Metropolitan and Manhattan Elevated Railroad Companies, or either of them, for any and all injury or damage done to the aforesaid property, or to the value or uses thereof, in the past, present, or future, by reason of the construction and operation of the elevated railroad in front of the said premises, and as they are now constructed and operated."

Prior to the execution and delivery of this deed the parties entered into a contract of sale for the same, bearing date April 16, 1888. This contract is in the usual form, and also contained the following agreement of reservation in respect of the rights of action against the elevated railroad companies and the damage accruing from the maintenance and operation of the railroad in front of the property:

"It is further agreed and understood, as a condition of this agreement, that the Western Union Telegraph Company reserves all claim or right of action against the Metropolitan and Manhattan Elevated Railroad Companies, or either of them, for any and all injury or damages done to the said property, or to the value or uses thereof, in the past, present, or future, by reason of the construction and operation of the elevated railways in Church street, as they now stand and are now being operated; and the said George W. Tubbs, in the

purchase of said property, and any and all persons to whom he may convey, accept title waiving and releasing any and all claims against said railroad company as now constructed and operated, unless more damaging changes shall be made in the structure and operation of said roads."

June 4, 1888,—the day he received the deed,—Tubbs transferred the property by deed to the defendants Messrs. Levy. It seems that Tubbs was simply a medium through which the transfer was made from the plaintiff to the defendants the Messrs. Levy. Prior to said transfer the defendant Jefferson M. Levy was informed that the Western Union Telegraph Company would reserve in the deed to Tubbs all right or claim for damages growing out of the use of the street in front of the premises in question by the elevated railways, and the operation thereof. He was also informed that it was the intention to transfer the building and lot upon which the building stood, and reserve to the Western Union Telegraph Company all claims growing out of the use of the street in front thereof by the elevated railroad, the operation thereof, and any damages therefrom. September 26, 1888, the Messrs. Levy transferred the property by deed to the defendant Allen Mitchell. January 17, 1889, the defendant Mitchell retransferred the property to the Messrs. Levy by deed of that date. On March 29, 1889, the Messrs. Levy conveyed the property to the defendant Shepard. This deed specifically referred to the prior reservation of the easements or right of action for the encroachments thereon contained in the deed to Tubbs for the benefit of the Western Union Company, as follows:

"Damages to said premises arising by reason of the elevated railroad as now constructed and operated in front of said premises, have been reserved to the Western Union Telegraph Company, a former owner."

When the defendant Shepard purchased the property, he knew of the existence of the railroad, and the reservation contained in the deed to Tubbs. The Messrs. Levy excluded from the price paid by the defendant Shepard the value of the easements taken by and then used by the defendant the Manhattan Railway Company. November 14, 1890, the defendant Shepard began an action against the Metropolitan Railway Company and the defendant the Manhattan Railway Company to enjoin them from maintaining and operating the said elevated railway in front of these premises, to compel said defendants to take down and remove the same, and to recover from them damages to the use of these premises arising since March 29, 1889,.the date upon which Shepard acquired title, by reason of the trespass of said railway upon the easements and property rights appurtenant to said premises. June 4, 1888, the defendant executed and delivered to the Western Union Telegraph Company a purchase-money mortgage to secure the payment of the sum of $85,000, which was thereafter assigned to, and is now owned by, the defendant Russell Sage, and is an existing lien upon the property. The defendant Shepard, before the commencement of this action, repudiated and denied, and now denies, that any rights exist as against him in the nature of a trust relation or otherwise in respect of these transactions, and which in any way preclude him from the prosecution of his action in his individual capacity, and as the full legal and

equitable owner of the premises and the easements and property rights thereto, and included within the said reservation clause. He claims to be entitled to such damages, and to all damages arising by reason of the unlawful occupation of the street by the railroad companies since the date of his purchase, and that the plaintiff has no legal or equitable right to any of the avails of that litigation. This action is brought by the plaintiff for the purpose of establishing a trust relation between the plaintiff, as grantor, and certain defendants, including the defendant Shepard, as grantees, to the end that the plaintiff may be enabled to reap the benefit of the litigation between the defendant Shepard and the defendant railroad company for the injury to such easements caused by such continuing trespasses by the elevated road.

The parties doubtless intended that the plaintiff should have the benefit of the damages to the property, past, present, and future, by reason of the operation and maintenance of the elevated railroad in the street, and it was the intention of the grantees to take the land burdened with the elevated road, and which it was expected would be a continuing one. The parties to the grant intended that the grantees should receive no compensation by reason of such injury, but that the grantor should. The parties intended that the grantees should take the premises the same as though the elevated railroad company had theretofore acquired a dominant right to maintain and operate its road. That was to be the extent of the grantees' interest by reason of the grant. It seems that the purchase price was adjusted upon that theory. It was the intention of the parties that the grantor, this plaintiff, should be entitled to receive from the elevated railroad compensation for all damages occasioned to the property, both rental and fee damages, by reason of the operation and maintenance of the elevated road. The parties supposed that the reservation would be effectual to carry out their intent. It seems it was not. The reservation was inoperative, because it attempted to reserve a right of action for damages to premises the title to which was vested in the grantees. Notwithstanding the language of the reservation, the right to recover the damages resided in the grantees, the same as though no attempted reservation had been made. There was no express agreement whereby the grantees were made trustees for the grantor. The reservation being ineffectual, plaintiff cannot enforce any claim against the railroad company, and there was no express agreement whereby the grantees undertook to enforce a claim for the benefit of the plaintiff. Resulting trusts are created by express agreement or by implication of law, and sometimes by reason of the wrongful act of a party. It is not claimed that the trust here attempted to be established arises by reason of the fraudulent, wrongful, or unlawful act or acts of the grantees. If any trust is created in favor of the plaintiff, it must be one which the law implies from the circumstances. The grantees ought not to be permitted to reap the benefit of that which in good conscience belongs to the grantor. I think a court of equity has power, and ought, under such circumstances, to carry out the intent of the parties by declaring a trust in favor of the grantor, and in that way to relieve

such grantor from a situation brought about by a failure to understand the legal character of the reservation actually made. That the parties did not know the legal effect of the reservation is no reason why equity should not carry out the real intention of the parties, and enforce their substantial rights. Thurber v. Chambers, 66 N. Y. 42.

Counsel for plaintiff will prepare decision and judgment which may be settled before me at chambers on five days' notice. The interlocutory judgment must provide the manner in which the costs and expenses of the trustee should be determined and adjusted. The question of the·costs of this action may be reserved until such settlement.